[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2011
JOHN LEY
CLERK

_____

No. 09-16146

_____

D. C. Docket No. 09-01537-CV-2-RBP,
BKCY No.07-03515-TBB-13

IN RE:

TERRY D. JACKS,
SANDRA C. JACKS,

Debtors.

_____

TERRY D. JACKS,
SANDRA C. JACKS,

Plaintiffs-Appellants,

versus

WELLS FARGO BANK, N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 7, 2011)

Before MARTIN, COX and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Plaintiff-Appellants Terry and Sandra Jacks filed this purported class action as an adversary proceeding before the bankruptcy court. Their amended complaint alleged their mortgage lender, Wells Fargo Bank, N.A., violated various provisions of the Bankruptcy Code and Bankruptcy Rules by failing to disclose certain fees on the proof of claim it filed in the Jacks' Chapter 13 bankruptcy case. Prior to considering class certification, the bankruptcy court chose to address the merits of the Jacks' individual claims. Following a hearing in which it made findings of fact and conclusions of law, the bankruptcy court granted summary judgment in favor of Wells Fargo on all counts. The Jacks appealed this decision to the district court, which affirmed the bankruptcy court's decision.

We affirm the grant of summary judgment in Wells Fargo's favor as to all claims except those based on actions that Wells Fargo may take after the Jacks' bankruptcy case is dismissed or discharged. We determine to the extent the Jacks' claims are based on events that may take place later, they are not ripe, and we dismiss them.

## I. BACKGROUND

In November 2004, Terry and Sandra Jacks obtained a home mortgage from Washington Mutual Bank. In March 2007, the mortgage was assigned to Wells Fargo. Later that year, on August 8, 2007, the Jacks filed a voluntary petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama. The petition disclosed that Wells Fargo held a secured claim as a mortgage on the Jacks' home.

On September 6, 2007, Wells Fargo filed a proof of claim asserting a secured claim of $162,205.57. Exhibit A to the proof of claim was an "Itemization of Claim and Summary of Supporting Documents." This exhibit listed the Jacks' total debt of $162,205.57.[1] It did not list any pre-petition attorney fees or costs, but stated at the end of the itemization section:

> Please be advised that reasonable fees and costs for the review of the bankruptcy pleadings, review of client information, preparation and filing of the Proof of Claim will be charged to the lender/servicer for post-petition services rendered subsequent to the filing of this bankruptcy matter. Further, note that future fees and costs for bankruptcy related services are expected to accrue throughout the life of this bankruptcy case, and will be charged to the lender/servicer. If such fees and costs or charges are not paid through the bankruptcy, the lender reserves the right, at the lender's discretion, to seek future

---

[1] The proof of claim also asserted an arrearage in the amount of $1,191.83. According to Wells Fargo, the arrearage was claimed in error, and the Jacks' monthly mortgage payments were current when the proof of claim was filed.

3

> reimbursement for the fees, costs and charges related to services rendered and expenses incurred pursuant to the terms provided for in the underlying security instrument, the bankruptcy code and other applicable law.

After the proof of claim was filed, Wells Fargo's outside law firm submitted to Wells Fargo an invoice documenting $310 in fees and expenses associated with preparing and filing the proof of claim in the Jacks' case.

On October 17, 2007, the Jacks filed an Amended Chapter 13 Plan. The plan called for the Jacks to continue to make their regular monthly payment directly to Wells Fargo. It did not list any arrearage to be paid by the trustee. The plan also noted, "Debtors also may have a potential lawsuit against Wells Fargo Home Mortgage for violations of the automatic stay, § 506 and Rule 2016 for assessing post-petition fees and costs which were undisclosed on the proof of claim and/or may have a potential declaratory judgment action regarding language used in the proof of claim as being unnecessary or deceptive. The Debtors hereby wish to preserve said causes of action in their bankruptcy case." The bankruptcy judge entered a confirmation order on December 28, 2007.

On July 29, 2008, the Jacks filed a complaint against Wells Fargo in the U.S. Bankruptcy Court for the Northern District of Alabama. The Jacks, claiming to act on behalf of themselves and a class of similarly situated mortgagors, alleged

Wells Fargo violated several provisions of the Bankruptcy Code and failed to comply with the Federal Rules of Bankruptcy Procedure by improperly "charg[ing], assess[ing], impos[ing] and/or collect[ing] impermissible fees" on the plaintiffs' and similarly situated mortgagors' accounts. In the Jacks' case, they alleged Wells Fargo had "charged or assessed" $310 in bankruptcy-related fees to the Jacks' account without disclosing these fees in the proof of claim or seeking approval from the bankruptcy court. The complaint further alleged Wells Fargo was "attempting to collect this amount or will collect this amount during the pendency of the case, once the Debtors have received their discharge, or once they are dismissed from the case, whichever occurs first."

The $310 in fees had been recorded on the Jacks' "Customer Account Activity Statement" as two charges in the amount of $150 each and one charge for $10 posted on October 25, 2007. A litigation representative for Wells Fargo explained in her deposition testimony that the Customer Account Activity Statement tracks payments and disbursements related to the servicing of a loan, including bankruptcy-related fees and expenses. It may include fees paid by Wells Fargo that are provisionally assessed to the loan for bookkeeping purposes. In this case, the fees were attorney's fees and other costs paid by Wells Fargo to its

5

attorneys to review the Jacks' bankruptcy plan and to prepare Wells Fargo's proof of claim.

The record reflects that the Jacks became aware of the proof of claim fees when the Customer Account Activity Statement was sent to Sandra Jacks after she called Wells Fargo to request the activity history on her account. The Customer Account Activity Statement is the only document in evidence that lists the $310 in fees. Sandra Jacks stated in her deposition she had never been billed for or asked to pay the charges or told she would be expected to pay them. Similarly, Terry Jacks testified Wells Fargo had never done anything to attempt to collect these fees. Wells Fargo continued to send statements for the regular monthly payment due under the mortgage and did not add any additional charges to these statements.

The bankruptcy court addressed the merits of the Jacks' claim prior to considering class certification and entered summary judgment for Wells Fargo on all counts. The district court affirmed.[2]

## II. DISCUSSION

---

[2] At the district court, the Jacks' case was consolidated with that of another set of plaintiffs–Alan and Cynthia Isom. These cases originally remained consolidated on appeal to this Court, however, this Court in March 2010 dismissed the Isoms' appeal after concluding we lacked jurisdiction.

The Jacks contend on appeal the district court erred in affirming the bankruptcy court's grant of summary judgment on: (1) their claims that Wells Fargo violated the automatic stay provisions in 11 U.S.C. § 362; (2) their claims that Wells Fargo violated 11 U.S.C. §506(b) and Bankruptcy Rule 2016 by failing to disclose the fees; and (3) their objection to the proof of claim. "As the second court of review of a bankruptcy court's judgment, this court examines independently the bankruptcy court's . . . determinations" and employs the same standard of review as the district court. *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992) (internal quotation marks omitted). We review de novo an order granting summary judgment. *Id.* at 1229.

A. *Claims for Violations of the Automatic Stay*

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a) imposes, subject to certain exceptions, an automatic stay of various acts that are attempts to enforce prepetition claims or that would otherwise affect or interfere with property of the estate or debtor. *Collier on Bankruptcy*, 16th ed., 3-362, ¶ 362.01. Section 362 "is one of the fundamental debtor protections provided by the bankruptcy laws" because it "gives the debtor a breathing spell from his creditors," "stops all collection efforts, all harassment, and all foreclosure actions," and "permits the debtor to attempt a repayment or reorganization plan." H.R. Rep. No. 95-595, at

7

340 (1978). The automatic stay also protects creditors by preventing a race for the debtor's assets and enabling an orderly liquidation process. *Id.*

The Jacks claim Wells Fargo violated three separate automatic stay provisions: (1) section 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;" (2) section 362(a)(5), which prohibits "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;" and (3) section 362(a)(6), which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Wells Fargo contends the Jacks cannot establish any automatic stay violation because the mere recordation of charges on the Customer Account Activity Statement is not an "act" in violation of the automatic stay.

We consider each of the Jacks' automatic stay violation claims below, and as to each claim, we affirm the grant of summary judgment in favor of Wells Fargo.

1. Section 362(a)(3).

As stated above, 11 U.S.C. § 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise

control over property of the estate." The Jacks claim Wells Fargo acted to protect its security interest in the house–which was property of the estate prior to the confirmation of the Jacks' plan–by paying a law firm to file claims in the bankruptcy case. According to the Jacks, these fees then became a lien on their home by virtue of the terms of the mortgage. As such, the Jacks argue, Wells Fargo acted to obtain possession of property of the estate or otherwise exercise control over property of the estate.

As Wells Fargo points out, however, while the loan documents may give it the right to modify the mortgage to include the fees at issue, there is no evidence Wells Fargo has actually exercised this right by adding these fees to the loan balance, nor is there evidence it has otherwise collected or attempted to collect the $310 in bankruptcy-related fees. In fact, as Sandra Jacks testified, the monthly statements sent by Wells Fargo after the filing of the bankruptcy petition reflected only the normal payment due under the mortgage and did not include any additional fees. The Jacks learned of the recordation of these fees only because Sandra Jacks specifically requested a copy of the account history.

The mere recordation of fees incurred by Wells Fargo on its internal records, without any attempt to collect these fees from the debtor or estate or to modify the mortgage, is not an "act" in violation of § 362(a)(3). The First Circuit

9

reached this same conclusion in considering the claims of debtors who learned through records obtained in a discovery proceeding that their mortgage lender had posted bankruptcy-related fees to its internal records. *See Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003). As that court explained, "unilateral accruals of amounts assertedly due, but in no manner communicated to the debtor, the debtor's other creditors, the bankruptcy court, nor any third party, plainly are not the sort of 'act' Congress sought to proscribe." *Id*.; *see also Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002) (explaining that a creditor "could produce all kinds of paperwork which if communicated to the debtor or a third party would violate the stay, but absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred"). Neither possession nor control of the property was affected by Wells Fargo's entry of the fees on its internal records. Absent some other overt attempt by Wells Fargo to recover these fees from the estate or to gain advantage over other creditors, the entries on the Customer Account Activity Statement do not constitute a violation of the automatic stay. We therefore conclude Wells Fargo was entitled to summary judgment on this claim.

 2. Section 362(a)(5).

The Jacks also claim Wells Fargo violated § 362(a)(5), which prohibits "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." This claim suffers from the same deficiency as the Jacks' claim under § 362(a)(3). While the Jacks may face potential future liability for the charges under the terms of the mortgage, they have not offered any evidence that Wells Fargo has actually undertaken any act to modify the lien. "[A] mere potentiality of future liability reasonably cannot be considered the 'creation' of a new and enlarged lien." *Mann*, 316 F.3d at 4. As such, Wells Fargo was entitled to summary judgment on this claim.

3.    Section 362(a)(6).

Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." As an initial matter, we note some doubt over whether this section–which applies to actions regarding pre-petition claims–applies to actions in connection with fees that accrued post-petition. In any case, however, the Jacks' claim under § 362(a)(6) fails for the same reason as their other claims for violations of the automatic stay: Wells Fargo has not committed any "act" in violation of the stay.

11

Section 362(a)(6) "prevents creditors from attempting in any way to collect a prepetition debt." H.R. Rep. No. 95-595, at 342 (1978). As explained above, Wells Fargo has not attempted to collect the proof-of-claim fees from the Jacks. It has merely recorded on internal documents fees it incurred in association with the Jacks' account. It has not charged these fees against the Jacks' account, added them to the balance due on the mortgage, or communicated them to the Jacks in any form that could be construed as an attempt to collect.[3] Wells Fargo was therefore entitled to summary judgment on this claim.

B.    *Claims Relating to Wells Fargo's Failure to Disclose the Proof of Claim Fees*

The Jacks claim that district court erred in affirming summary judgment in favor of Wells Fargo on their claims that Wells Fargo violated the Bankruptcy Code and Rules by recording the fees without disclosing them. Specifically, the Jacks contend Wells Fargo's failure to disclose the postpetition fees violated

---

[3] The Jacks cite to several bankruptcy court cases for the proposition that a creditor's placement of a charge on its books can amount to a violation of the automatic stay. Unlike the facts here, those cases involved fees that had been charged to the balance on the debtor's account. *See McCormack v. Fed. Home Loan Mortg. Corp. (In re McCormack)*, 203 B.R. 521, 524-525 (Bankr. D. N.H. 1996) (noting the fees had been added to the negative escrow balance and were reflected in year-end statements and adjusted monthly mortgage payment amounts); *Dean v. First Union Mortg. Corp. (In re Harris)*, 280 B.R. 876, 883 (S.D. Ala. 2001) (noting the "major relief to be accorded [the debtors] is to have the fee *wiped off their account balances*") (emphasis added). Here, there is no indication that the fees have ever been added to the balance of the Jacks' mortgage loan or otherwise "charged" to their account.

Section 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016.[4] The Jacks

seek both damages and injunctive relief.

Section 506 addresses the "Determination of secured status" on a creditor's

claims. Subsection (b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Rule 2016(a) governs an "Application for compensation or reimbursement."

It requires, "An entity seeking interim or final compensation for services, or

reimbursement of necessary expenses, from the estate shall file an application

setting forth a detailed statement of (1) the services rendered, time expended and

expenses incurred, and (2) the amounts requested." Bankr. Rule 2016(a).

According to the Jacks, these provisions promote the Bankruptcy Code's

goal of giving debtors a "fresh start." *See Marrama v. Citizens Bank of Mass.*, 549

U.S. 365, 367; 127 S. Ct. 1105, 1007 (2007) ("The principal purpose of the

---

[4] The Jacks also claim that Wells Fargo's failure to disclose the fees in the proof of claim violated Bankruptcy Rule 3001(f). This provision simply governs the evidentiary effect of a properly filed proof of claim. The district court did not err in affirming the bankruptcy court's grant of summary judgment on this claim.

13

Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.")
(quotation marks omitted).  The Jacks claim this "fresh start" cannot be achieved,
however, if Wells Fargo or other similarly situated creditors may avoid disclosing
fees that could be treated as part of the arrearage claim payable through the
bankruptcy plan.  In the absence of disclosure, a debtor might pay all the amounts
necessary to cure the arrearage only to emerge from bankruptcy to discover he is
facing additional fees he knew nothing about.  *See In re Watson*, 384 B.R. 697,
707 (Bankr. D. Del. 2008) ("If the Court and Chapter 13 Trustee fully administer a
case through completion of a . . . Chapter 13 plan, only to have the debtor
promptly re-file on account of accrued, undisclosed fees and charges on her
mortgage, it could fairly be said that we have all been on a fool's errand . . . .").

The Jacks rely on a line of bankruptcy court decisions that, in varying
degrees, support the proposition that pursuant to § 506(b), Rule 2016, or both of
these provisions, a secured creditor must disclose and obtain court approval of
postpetition legal expenses.  *See, e.g.*, *Jones v. Wells Fargo Home Mortg. (In re
Jones)*, 366 B.R. 584, 594 (Bankr. E.D. La. 2007) (concluding postpetition
charges that may be included in the debts necessary to cure a default under a
bankruptcy plan "must be disclosed and are subject to review by the bankruptcy
court for reasonableness"); *Dean v. First Union Mortg. Corp. (In re Harris)*, 280

14

B.R. 876, 884 (Bankr. S.D. Ala. 2001) (concluding "creditors cannot obtain postpetition/ preconfirmation fees from chapter 13 debtors without disclosure"). Bankruptcy courts that have addressed the issue, however, have not uniformly reached this conclusion. As Wells Fargo notes, at least one bankruptcy court has concluded "whatever merits [] the policy arguments may have," neither § 506(b) nor Rule 2016(a) applies to a secured creditor who incurs postpetition legal expenses chargeable to the debtor under the terms of the mortgage when the creditor makes no attempt to obtain payment for these expenses during the bankruptcy case. *Padilla v. GMAC Mortg. Corp. (In re Padilla)*, 389 B.R. 409, 437-43 (Bankr. E.D. Penn. 2008).

Although we express no opinion as to the specific holdings in those cases, we note many of the cases on which the Jacks rely involved creditors who had actually collected or attempted to collect the undisclosed fees either during the bankruptcy or upon discharge. *See, e.g.*, *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356, 372 (Bankr. S.D. Tex. 2009) (noting the mortgage holder "admits that it attempted to collect fees and expenses, which accrued during the Plaintiffs' cases, *after* the Plaintiffs had emerged from bankruptcy" and that it "threatened foreclosure on account of the unpaid fees and expenses" (footnote omitted)); *In re Jones*, 366 B.R. at 594 (noting the

15

undisclosed attorney's fees "were unwittingly paid by Debtor through the application of either Trustee payments or Debtor's direct mortgage payments"). Here, on the other hand, there is no evidence Wells Fargo has collected or attempted to collect the fees during the pendency of the Jacks' bankruptcy.

Assuming *arguendo* that § 506(b) and Rule 2016(a) require disclosure of postpetition fees in some circumstances, we hold those provisions are not violated when a creditor merely records costs it has incurred in association with a mortgagee's bankruptcy for internal bookkeeping purposes and makes no attempt to collect the fees or otherwise add them to the debtor's balance. Therefore, to the extent the Jacks' disclosure claims rely on events that have occurred during the course of their Chapter 13 case, the district court did not err in affirming the bankruptcy court's order granting summary judgment in Wells Fargo's favor.[5]

This conclusion does not entirely resolve the Jacks' disclosure claims, however, because the Jacks claim the failure to disclose the fees renders them uncollectible at any point, including when their case is either discharged or

_____

[5] We note that the Jacks also raise the issue of whether the bankruptcy court erred in determining § 105(a) could not be used to award damages for alleged violations of these provisions. Because we find no violation of these provisions has occurred, we do not address the parties' arguments regarding the bankruptcy court's authority to provide relief for these violations, or the appropriate scope of such relief, pursuant to its § 105(a) powers.

16

dismissed. As such, in addition to requesting damages, the Jacks also requested an injunction prohibiting Wells Fargo from collecting these fees in the future.

We do not reach these arguments because we conclude these claims are not ripe for adjudication. "The ripeness doctrine raises both jurisdictional and prudential concerns." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995). "It asks whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Id.* In deciding whether a claim is ripe, we consider: "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 1515 (1967). A claim is not ripe when it is based on speculative possibilities. *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1341 n.7 (11th Cir. 2000).

Here, we do not know whether the Jacks' bankruptcy will end in a discharge or a dismissal. We note that Wells Fargo represents on appeal that it will not seek to collect the charges if the Jacks successfully complete their Chapter 13 plan and receive a discharge. Although we are "reluctant to accept mere bald assurances . . . it cannot be said with any confidence that [Wells Fargo's] collection efforts are

17

inevitable." *See Mann*, 316 F.3d at 6 n.8.  In addition, we note that an attempt to collect the undisclosed fees post-dismissal may present legal issues distinct from those raised by an attempt to collect post-discharge.[6]  Therefore, to the extent the Jacks' claims are based on events that may take place in the future, these claims are dismissed for lack of jurisdiction.  *See, e.g., Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1574 n.7 (11th Cir. 1989) ("[R]ipeness goes to whether the district court had subject matter jurisdiction to hear the case.").

C.  *Objection to the proof of claim*

Finally, the Jacks contend the bankruptcy court erred in granting summary judgment in Wells Fargo's favor on their objection to the proof of claim.  Section 502 governs the "Allowance of claims or interests."  Section 502(a) makes clear, "A claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."  Section 502(b)(1), the provision on which the Jacks rely, provides that if an objection is made, the court should determine the amount of the claim and "shall allow such claim in such amount, except to the extent that [] such claim is unenforceable against the debtor and

---

[6] For example, Wells Fargo argues the Jacks would not be entitled to the "fresh start" afforded by the Bankruptcy Code if they fail to fully comply with their bankruptcy plan and the case is dismissed pursuant to 11 U.S.C. § 349.  *See* 11 U.S.C. 349(b); S. Rep. No. 95-989, at 49 ("The basic purpose of [this] subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.").

18

property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The bankruptcy court concluded Wells Fargo's failure to disclose fees in the proof of claim was not a valid basis for an objection. Because the amount claimed in the proof of claim did not actually include the allegedly improper proof of claim fees, the bankruptcy court concluded, there was nothing in the proof of claim for the Jacks to object to.

We agree Wells Fargo's failure to include the proof of claim fees on the proof of claim does not provide a valid basis for an objection. Under § 502(b)(1), a claim asserted in a proof of claim is allowed in the amount asserted "except to the extent that [] *such claim* is unenforceable." "Such claim" refers to the claim actually asserted on the proof of claim. As to this amount–in this case, $162,205.57–the Jacks have identified no reason why such amount is unenforceable. Wells Fargo was therefore entitled to summary judgment.

III.  CONCLUSION

To the extent the Jacks' claims are based on events that have occurred during the pendency of their bankruptcy, we hold that Wells Fargo was entitled to summary judgment in its favor on these claims. To the extent the Jacks premise claims on events that have not yet occurred, we conclude these claims are not ripe, and we dismiss them.

AFFIRMED in part and DISMISSED in part.