**IN RE: Ronald Edward SCIORTINO, Debtor.**

**Ronald Edward Sciortino, Plaintiff,**

**v.**

**Gwinnett County Department of Water Resources and Gwinnett County, Defendants.**

**CASE NO. 14–71765–BEM**
**Adversary Proceeding No. 15–5356–BEM**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

December 19, 2016

Filed 12/20/2016

---

Ronald Edward Sciortino, Pro Se.

Lynette Howard, Pro Se.

Albert F. Nasuti, Michael Brian Pugh, Thompson O'Brien Kemp & Nasuti, P.C., Norcross, GA, for Defendant.

## MEMORANDUM OPINION

Barbara Ellis–Monro, U.S. Bankruptcy Court Judge

This matter comes before the Court on Plaintiff's Amended Complaint in which Plaintiff alleges, among other things [1], that

---

1. Plaintiff filed an Amended Emergency Motion tion For Injunctive Relief, Motion For Con-

Gwinnett County Department of Water Resources (the "Department") and Gwinnett County (the "County" and with the Department, "Defendants") willfully violated the automatic stay of 11 U.S.C. § 362(a) thereby entitling him to an award of damages under 11 U.S.C. § 362(k). A trial in this adversary proceeding was held November 30, 2016 (the "Trial").

Prior to Trial, the Court entered several orders[2] including an Order Denying Motion For Summary Judgment and Notice Of Trial (the "Summary Judgment Order") which limited the issues to be tried as follows: (i) whether the account statement issued November 5, 2014 (the "Final Statement") constitutes an attempt to collect a debt, and if it does (ii) whether Plaintiff's receipt of the Final Statement injured Plaintiff. [Doc. 116]. After carefully considering the pleadings, the testimonial and documentary evidence admitted and the applicable authorities, the Court concludes, as explained in this memorandum opinion, that the three documents Defendant Department of Water Resources sent to Plaintiff, which included the Final Statement, did not amount to an attempt to collect a debt and the Department did not willfully violate the automatic stay. The Court concludes further that the evidence does not support a finding that the County had any involvement in the matters at issue in this proceeding and it will be dismissed as a party defendant.

## I. Jurisdiction

■■■ Bankruptcy courts are courts of limited jurisdiction whose jurisdiction is "derivative of and dependent upon" the three categories of proceedings set forth in 28 U.S.C. § 1334(b). *See In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999). Thus, bankruptcy courts are permitted to hear only matters: (1) arising under title 11, (2) arising in a case under title 11, and (3) related to a case under title 11. *Id.*; 28 U.S.C. § 157(a). Matters arising under title 11 involve "matters invoking a substantive right created by the Bankruptcy Code while matters arising in a case under title 11 are generally administrative-type matters that could arise only in bankruptcy." *Toledo*, 170 F.3d at 1344. The automatic stay is a substantive right created by the Bankruptcy Code and a determination whether the stay was willfully violated un-

tempt, Motion For Violation Of Automatic Stay, Motion For Creditors Misconduct against the Defendants, 9 individuals associated with or employed by the Defendants, the chapter 7 Trustee for Plaintiff's bankruptcy estate and John Doe, Jane Doe aka you your 1–285,000, et. al. in which he sought an injunction to stop Defendants from denying him access to municipal water services based upon alleged improprieties in billing practices. [Doc. 29].

2. On February 12, 2016, the Court entered an Order Denying Request For Emergency Hearing And Regarding Jurisdiction in which the Court concluded that it had jurisdiction over Plaintiff's claim for a violation of the automatic stay and claims raised regarding the Trustee's discharge of his duties as Trustee, but that all other claims Plaintiff sought to raise in the Amended Complaint were not within this Court's subject matter jurisdiction. [Doc. 57]. Thereafter, on March 18, 2016, the Court entered an Order Granting the Motion to Dismiss of the Chapter 7 Trustee of all claims against the Trustee and Granting in part the Motion to Dismiss of all other Defendants (the "Dismissal Order"). [Doc. 79]. The Dismissal Order further provided that all defendants except the Defendants herein were dismissed from the proceeding and that as a matter of law the only potential claim that remained was whether an invoice sent to Plaintiff, dated November 5, 2014, violated the automatic stay. *Id.* In addition the Court entered orders on Plaintiff's Motions to Reconsider each of these orders. [Docs. 110, 112]. On September 20, 2016, the Court entered an order denying the Defendants' Motion for Summary Judgment and identifying the two issues that remained to be tried. [Doc. 116].

der 11 U.S.C. § 362(k) constitutes a core proceeding in which this Court has the authority to enter a final judgment.

## II. Facts

Ms. Carol Buck ("Buck") is the manager of the customer care department for the Department. The customer care department is charged with insuring that customer billing is timely and accurate and that customer calls and walk up inquiries are answered in a timely manner. Buck testified that the Department provides service to 244,000 customers, that she is familiar with Plaintiff's accounts with the Department and that Plaintiff has been involved in a dispute with the Department related to disconnection of service.

Buck testified that when the Department is notified of a bankruptcy filing, the existing account is closed and a new account is opened with the pre-filing account balance being held in suspense until the bankruptcy case is either discharged or dismissed. If a case is dismissed the pre-filing balance would then be put under the new post filing account. Buck testified further that if a customer has filed bankruptcy multiple times it can be confusing and laborious because there are multiple dates to track and correlate with the multiple accounts. Upon receiving notice of a bankruptcy filing, the Department always closes the existing account and sends the customer a package comprised of the final statement for the pre-filing account, the Department's bankruptcy guidelines and an explanatory letter.

When Plaintiff filed his current case[3], case number 14–71765 on November 3, 2014, Plaintiff called and emailed the De-partment on the morning of November 4, 2014 to advise the Department of the filing and request that his water service, which had previously been turned off due to non-payment, be restored. The Department restored service at 1:48 p.m. the following day, November 5, 2014. Plaintiff testified that he was happy to have his water service restored at that time.

In accordance with its policy, the Department closed Plaintiff's pre-filing account. In addition, the Department mailed Plaintiff a final statement for that account, account number 5094 (the "Final Statement"), the Department's bankruptcy guidelines (the "Guidelines") and a letter regarding the closure of the existing account, account number 5094 and the opening of a new post-petition account (the "Letter" and with the Final Statement and the Guidelines, the "Bankruptcy Package"). Buck testified that all customers who file bankruptcy receive these three documents and that no one has ever complained that they were confused by the documents nor has anyone tried to pay a pre-petition balance. Buck testified further that no payment on the prepetition account would be accepted until discharge or dismissal and if someone tried to pay the amount owed on the pre-petition account the payment would be applied to the post-petition account.

The Final Statement is divided into two parts, the top part of the page includes a Customer Information section that identifies the account number, the billing period, the payments posted through date of 11/05/2014, the service location and the water usage and an Account Transactions section that identifies the Previous Bal-

---

3. Plaintiff filed two previous bankruptcy cases. The first, case number 11–84809 was filed on December 5, 2011 and was dismissed on April 25, 2012 because of the Plaintiff's failure to pay the filing fee. [Defendants Ex. 1]. Plaintiff's second bankruptcy case was filed on March 31, 2014 and was dismissed on June 4, 2014 after Plaintiff failed to appear for two scheduled 341 meetings. [Defendants Ex. 2].

ance, Payments/Adjustments, Deposit Credit, Balance Forwarded (due now), Current Charges, a Current Due Before 12/01/2014 of $10.18 and a TOTAL DUE (emphasis in the original) of $2,946.60, a SPECIAL MESSAGE section which states FINAL INVOICE, BALANCE DUE. The bottom portion of the Final Statement is a payment coupon which instructs that the portion below the perforation should be RETURN[ED] WITH PAYMENT, provides a PAYMENT DUE 12/01/2014, PAY THIS AMOUNT 2,946.60 and Make checks payable to Gwinnett County Department of Water Resources. [Plaintiff Ex. J; Defendants Ex. 9].

The Guidelines[4] are contained on one page entitled Residential Bankruptcy Account Guidelines and provide as follows:

Customers seeking Bankruptcy Protection must provide:

1) Complete copy of the petition

2) Copies of amendments

3) Complete copy of the Dismissal or Discharge

It will be the customer's responsibility to provide copies of all documentation including any Amendments filed as well as the Dismissal or Discharge papers. Any failure to provide this information may result in the past due balances on the closed account to be transferred to the new account established at the time of filing.

Customers will be required to establish a new account as of the date the Petition is filed. The following requirements must be fulfilled in order to establish new service:

Complete copy of the petition listing Gwinnett County as a creditor

The name on the filing must exactly match the name on the Gwinnett County Water and Sewer Account.

An Account Activation Fee will be assessed in order to cover that administrative costs associated with obtaining a meter reading and establishing the account in the billing system (see the current rate and fee schedule for the amount of the Activation Fee).

A Deposit in the amount of three (3) times the average monthly consumption for water and server must be paid in order to maintain an adequate assurance of payment

All fees must be paid in advance of the establishment of the new service (cash, debit, certified check, money order, credit card payments will be accepted).

If the account is currently locked due to non-payment, service will be restored next business day after receipt of the necessary payment and documents.

The customer will be responsible for timely submission of all payment on the new account. Late fees and disconnection charges will apply to any past due amount on the new account.

[Plaintiff Ex. L].

The Letter provides as follows:

Due to the bankruptcy status of Account # 5094 it was necessary to close the account as of the Bankruptcy Petition date. The Account # 5094 has been replaced with the new Account # 5094 in order to bill the account based on current usage. This letter is sent for your reference only in order to update your information with Gwinnett County Wa-

---

4. There was an objection to admission of Defendants Ex. 8 which is a newer version of the Department's bankruptcy Guidelines. Plaintiff testified that he received the older version of the Guidelines set forth above. There was no contrary evidence regarding which version was included in the Bankruptcy Package, thus the Court finds that the Guidelines set forth above were included in the Bankruptcy Package.

ter Resources. Enclosed, is the Final Bill for Account # 2879 as well as a copy of our Bankruptcy Guidelines. The Final Bill has a balance of $2,946.60 which will remain on the account under Bankruptcy Protection until the case is discharged or dismissed.

In order to open the new account, a new deposit of $225.00 and a NonRefundable Activation Fee of $60.00 have been added which is standard policy with Gwinnett County Water Resources for all accounts.

Should you have any questions please feel free to contact our Residential Department at 678–376–6800 regarding this matter.

[Plaintiff Ex. K; Defendants Ex. 7].

Plaintiff testified that he was confused by the Letter and terrified by the Final Statement because the amount due was substantial, he could not pay it and he was suffering stress from having to wait a day for his water to be turned back on. Plaintiff testified further that he was not told that he would have to pay the balance owed as shown on the Final. Statement before his water service would be restored. Plaintiff stated he was also confused by the Guidelines. Notwithstanding his confusion, Plaintiff testified that he did not call the Department for clarification.

Buck testified that the Department maintains call records of all customer calls and that Plaintiff is a frequent caller to the Department and has called 102 times, but that Plaintiff did not call or otherwise contact the Department upon his receipt of the Bankruptcy Package. After he provided notice of his bankruptcy filing in November, 2014 the next time the Department received any communication from Plaintiff was two months later, on January 8, 2015, when the Department received mailed correspondence from Plaintiff disputing charges on Account 2879 (the post-petition account). The next communication from Plaintiff after that was on March 4, 2015, after the Department disconnected water service for nonpayment of post-petition charges.

Both Plaintiff and Buck testified that in January 2014, the parties had negotiated a payment plan which allowed Plaintiff to have his water service restored. Buck testified further that the Department worked with Plaintiff in an effort to continue his access to water service and credited late fees, delayed disconnection, provided additional time to pay and tried to prevent disconnection of Plaintiff's water. Notwithstanding, sometime after the dismissal of Plaintiff's second bankruptcy case water service was discontinued and it was not restored until after Plaintiff's current bankruptcy case was filed. The Department is funded by user fees and by taxes and the activation fee to restore service covers the costs to read the meter and for account set up. The Department establishes bankruptcy guidelines through a process in which Buck makes recommendations subject to approval of the deputy director and the director of the Department.

Buck testified that the numbers contained in the Letter were transposed and that account number 5094 was the prepetition account and account number 2879 was the post-petition account. On cross examination, Buck agreed that the account numbers contained in the Letter were not "orderly". Buck testified further that all customer billings contain a return envelope for payment, but final statements sent in conjunction with bankruptcy filings do not contain a return envelope and that the Bankruptcy Package did not include a return envelope. Further, statements sent for months prior to the Final Statement include in the Special Message section a notice as follows: "PAST DUE BAL-

ANCE, SERVICE SUBJECT TO DIS-CONNECTION,". [Plaintiff Ex. D, E, F, G, H, I] (emphasis in the original). The Final Statement did not include any such notice.

Plaintiff testified that receipt of the Bankruptcy Package caused him emotional distress because of his ongoing disputes with the Department regarding his water bills and because he was "terrified" he would be required to pay $2,946.40 to avoid having his service discontinued. Plaintiff testified further that he suffers from PTSD which stems from being terrified about the billings from the Department, the excessive amounts the County has charged him to access water and denial of service because he cannot pay for service. Plaintiff testified that the bankruptcy court did not provide him a fresh start and thus did not offer the protections required and he has suffered emotional distress which is a daily compounding injury and further that having to litigate his claims has injured him.

Plaintiff testified that he has lost 50 pounds because of the stress of the proceeding, that he was unable to prosecute his bankruptcy because of the receipt of the Letter and that his injuries are directly connected to receipt of the Bankruptcy Package. He testified further that the Defendants' submission of exhibits, specifically exhibits 11 through 19 caused him to be unable to sleep for a week. Plaintiff also testified that he cannot work, is having to sell his personal property and is now receiving food stamps. On cross examination Plaintiff stated that he has been without income since sometime in 2014 "since they took my condo away" and that his first two bankruptcy filings were precipitated by a desire to stop the foreclosure of his residence. [Hearing Recording 1:25:14–1:25:25]. He stated further that his emotional injuries were not solely attributable to receipt of the Bankruptcy Package and actions by the Department but that these actions by the Department also caused emotional injuries.

## III. Conclusions of Law

### A. Evidentiary Issues

The Summary Judgment Order provides, in part, that

> [c]ounsel and pro se parties are hereby directed to prepare a list of exhibits and witnesses and to mark all exhibits. A copy of the list and copies of all exhibits shall be provided to opposing counsel at least five (5) business days before trial. A copy of the list and two (2) copies of all exhibits shall be provided to my Courtroom Deputy Clerk at least five (5) business days before trial.

[Doc. 116 p. 21]. Plaintiff and Defendant each provided copies of exhibits and the required lists prior to the hearing on Plaintiff's Motion To Reset Trial Date and Accept Filings As Timely Filed (the "Motion to Reset"). [Doc. 119]. At the hearing on the Motion to Reset the Court advised the parties that if they wished to submit additional exhibits or supplement their witness lists, a motion requesting leave to do so would be required which must be filed no later than November 18, 2016. The Court further directed that any such motion should explain why leave should be granted and explain the relevance of the additional exhibits to the two issues to be tried. An order setting forth these requirements and holding that all items filed at the time of the hearing on the Motion to Reset were deemed timely filed was entered on October 17, 2016. [Doc. 125].

On November 17, 2016, Defendants filed a Motion For Leave to submit one additional exhibit, exhibit 19 which did not exist prior to the order on the motion to reset and was relevant to the issue of

injury. [Doc. 127]. The request was granted. [Doc. 136]. On November 18, 2016 Plaintiff filed Plaintiff's Supplement To Statement Of Proposed Finding Of Fact [Doc. 128] in which he requested this judge's courtroom deputy timely file a supplement to proposed findings of fact and conclusions of law and an exhibit list setting forth 26 additional exhibits. Thereafter on November 22, 2016, Plaintiff filed a Motion For Leave To File Exhibits 1 Through 30 and Supplement To Statement of Proposed Findings Of Fact And Conclusions Of Law, Motion For Disability Advocate, Motion For Court Reporter and an Application To Proceed In Bankruptcy Court Without Prepaying Fees Or Costs. [Docs. 129–132] Orders denying each of these requests were entered on November 28, 2016. [Docs. 137–139]. With respect to declining to allow Plaintiff to supplement the exhibits he sought to use at Trial, the Court concluded that Plaintiff failed to comply with the directions given at the hearing on the Motion to Reset and the order entered on October 17 because he failed to timely file the motion, failed to explain the relevancy of the exhibits and failed to include, other than a general plea of disability, the reason(s) for late filing thus, the request was denied. [Doc. 137]. At trial, Plaintiff sought reconsideration of the orders with respect to Defendant's exhibit 19 and Plaintiff's exhibits 1–30. The request was denied, except for Plaintiff's Exhibit 10, which was admitted over Defendants' objection.

Plaintiff's Exhibits C–M were admitted without objection as were Defendants' Exhibits 6, 7 and 9. Plaintiff's Exhibit A, limited to page 1, a spreadsheet, was admitted over objection because page 1 of the exhibit was merely a compilation of the information contained in the source documents admitted as Plaintiff's Exhibits C–M while all other pages were demonstrative exhibits and thus, not admissible as evidence. Plaintiff's Exhibit B was not admitted because it was a compilation and the source documentation was neither provided to Defendants nor available to the Court. Further, Exhibit B was not relevant to the issues to be determined at trial because it concerned time periods after November 5, 2014. Plaintiff's Exhibits O and N were also excluded from evidence based upon Defendants' objection that the documents were hearsay and not within an exception to Federal Rule of Evidence 802. Exhibits O and N are letters from two different physicians regarding Plaintiff's mental and physical condition. Each letter included a cover page signed by an employee of the physician's office stating that the attached letter was a true and correct copy of the document. Neither the employees nor the physicians were present to testify and the Court sustained Defendants' hearsay objections to Exhibits O and N. Plaintiff's Exhibit 10–1 through 10–4 was admitted over Defendants' relevancy objection. The Court determined that the document was relevant because it corroborates the Department's practice of sending a bankruptcy package when a bankruptcy case is filed.

With respect to Plaintiff's objections to Defendants' exhibits, Plaintiff objected to admission of Defendants' Exhibits 11–19 on relevancy grounds and on the grounds that they were prejudicial. The Court overruled these objections finding that the exhibits, which are comprised of orders and pleadings filed in a domestic relations case in which Plaintiff is a party, are relevant to the issue of Plaintiff's mental and physical health and thus to whether Plaintiff was injured by receipt of the Bankruptcy Package. Plaintiff also objected to admission of Defendants' Exhibit 8 because it was not provided to Plaintiff. The Court excluded Exhibit 8 because Defendants did not establish that the newer set of bankruptcy guidelines had been sent to Plaintiff and thus, the document was not relevant to the issues the Court must determine.

Plaintiff requested that the record be reopened to allow him to file additional exhibits in response to Defendants' Exhibits 11–18. The Court denied the request because Exhibits 11–18 were of record prior to the hearing on the Motion To Reset and Plaintiff had not submitted any documents responsive thereto and had expressly stated that the continued trial date provided him sufficient time to prepare for trial. Further, the Court concluded that the motion to reopen would unnecessarily delay this proceeding which has been pending for more than one year. Thus, the record was closed and the Court took the matter under advisement.

### B. Defendants Were Not Attempting To Collect A Debt By Sending The Bankruptcy Package

■ The automatic stay goes into effect upon the filing of a bankruptcy case and prohibits various acts that constitute attempts to enforce prepetition claims. 11 U.S.C. § 362(a); *see also In re Jacks,* 642 F.3d 1323, 1328 (11th Cir. 2011). Among other things, the automatic stay prohibits, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title". 11 U.S.C. § 362(a)(6). The automatic stay is "one of the fundamental debtor protections provided by bankruptcy laws." *Roche v. Pep Boys (In re Roche),* 361 B.R. 615, 621 (Bankr. N.D. Ga. 2005) (Diehl, J.) (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986)). As such, the Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 3 62(k).

■ Violation of the automatic stay is willful if the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Eng'g, Inc. v. IRS,* 92 F.3d 1539, 1555 (11th Cir. 1996). In order to recover under § 362(k), the injury alleged must have been proximately caused by the stay violation. *Bankers Healthcare Grp., Inc. v. Bilfield (In re Bilfield),* 494 B.R. 292, 302 (Bankr. N.D. Ohio 2013); *Henkel v. Lickman (In re Lickman),* 297 B.R. 162, 190 (Bankr. M.D. Fla. 2003); *see also Roche v. Pep Boys, Inc. (In re Roche),* No. 05–63544, AP No. 05–09040, 2006 WL 6592059, at *4, 2006 Bankr. LEXIS 2325 (Bankr. N.D. Ga. May 17, 2006) (Diehl, J.) (finding that "Defendants['] failure to release the garnishment was the proximate cause of Plaintiff's" injury). Debtor has the burden to establish a willful violation of the stay by a preponderance of the evidence. *Spinner v. Cash In A Hurry, LLC (In re Spinner),* 398 B.R. 84, 94–95 (Bankr. N.D. Ga. 2008) (Diehl, J.).

It is undisputed that the Department sent the Bankruptcy Package to Plaintiff and that the Department was aware of the filing of the bankruptcy case at the time. Defendants argue however, that the Bankruptcy Package which included the Final Statement was not an attempt to collect a debt such that there was no violation of the automatic stay.

■ "[D]etermining whether a violation of the automatic stay occurs can be complicated and depends on such specifics as what type of communication was sent to the debtor and whether the communication had a purpose other than collection of the debt outside the scheme contemplated by the Bankruptcy Code." *Cousins v. CitiFinancial Mortg. Co. (In re Cousins),* 404 B.R. 281, 287 (Bankr. S.D. Ohio 2009). An important factor is whether the communication was coercive or harassing. *Colorado East Bank & Trust v. McCarthy (In re McCarthy),* 421 B.R. 550, 565–67 (Bankr. D. Colo. 2009) (finding that creditor's at-

tempt to have debtor reaffirm an unsecured debt violated the stay); *In re Draper*, 237 B.R. 502, 505 (Bankr. M.D. Fla. 1999) ("Any act taken by a creditor designed to collect a prepetition debt violates the stay if it amounts to pressure on the debtor to pay."). Even a communication sent for informational purposes should be limited to that purpose by including "at least one prominent and unambiguous disclaimer ...." *Thomas v. Seterus Inc. (In re Thomas)*, 554 B.R. 512, 520–21(Bankr. M.D. Ala. 2016).

■ As noted above, the Final Statement included a payment coupon, a due date, and instructions for payments remitted by check, but did not indicate that Plaintiff would suffer any adverse consequences in the event of nonpayment. The Final Statement was mailed in the same envelope as the Guidelines and the Letter which states that it is "sent for your reference only" and that "[t]he Final Bill has a balance of $2,946.60 which will remain on the account under Bankruptcy Protection until the case is discharged or dismissed." [Plaintiff Ex. K; Defendants Ex. 7].

Although the Letter contained an error in the references to the pre-petition and post-petition account numbers, the Court concludes that the more telling statement in the Letter is that $2,946.60, which is the exact amount of the Final Statement, will remain under bankruptcy protection until it is discharged or dismissed. This statement which accompanied the Final Statement is sufficient to inform the recipient that the Department is not seeking to collect the Final Statement and acts as a disclaimer for the Final Statement.

In addition, the Department argues that the Final Statement is informational because it contains information of a type that would assist Plaintiff in formulating a proposed plan and further that because the individual debtor and the Department continue to do business together it is important for a debtor customer to have the information contained in a final statement. Without doubt, the debtor in a chapter 13 case can benefit from knowing the exact amount owed and to be treated in a proposed plan; as can an individual, regardless of the chapter filed, benefit from knowing the exact amount owed if the case is dismissed because the individual would be responsible for any current charges plus the charges reflected on the final statement. It appears that in addition to this informational function the Department issues a final statement to facilitate its ability to track both the account held in abeyance during the pendency of a bankruptcy case and the new post-petition account. Thus, there is an informational purpose to providing a debtor with a final statement, the letter and the guidelines. Given the informational purpose and the disclaimer contained in the Letter which accompanied the Final Statement, the Court concludes that the Final Statement and the Bankruptcy Package did not constitute an attempt to collect a debt. As a result, sending the Bankruptcy Package to Plaintiff did not violate the automatic stay.

■ Notwithstanding, Plaintiff argues that he was thoroughly confused by the documents contained in the Bankruptcy Package and, as a result, he was distressed and was injured [5]. Section 362(k) explicitly requires that a debtor "must have first been 'injured' by the stay violation" and "that the creditors" actions caused the debtor to suffer damages which are 'actual,' that is damages that the debtor in fact incurred." *Hutchings v. Ocwen Fed. Bank, FSB (In re Hutchings)*, 348 B.R. 847, 881 (Bankr. N.D. Ala. 2006). The

---

5. Plaintiff relies on *Jackson v. Dan Holiday Furniture, LLC*, 309 B.R. 33 (Bankr. W.D. MO. 2004) (creditor called more than 20 times, posted repeated foreclosure notices and sent threatening letter to debtor); *Johnson v. Precision Auto Sales*, 2007 WL 2274715

burden of proof is borne by the party seeking damages. Actual damages in terms of expenses "must be proven with reasonable certainty." *Archer v. Macomb County Bank (In re Archer)*, 853 F.2d 497, 499–500 (6th Cir. 1988); *In re Sumpter*, 171 B.R. 835, 844 (Bankr. N.D. Ill. 1994).; In appropriate circumstances punitive damages may be awarded. *In re Parker*, 634 Fed.Appx. 770, 773 (11th Cir. 2015).

 Plaintiff seeks damages for the emotional distress he alleges he suffered because of the receipt of the Bankruptcy Package [6] and the one day delay in the restoration of his water service upon filing his current bankruptcy case. Emotional distress damages are included within actual damages contemplated by § 362(k). However not every willful violation of the automatic stay merits compensation for emotional distress. *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1325 (11th Cir. 2015). To recover "actual" damages for emotional distress under § 362(k), a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay. *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014).

 While Plaintiff testified that he was terrified by the information contained in the Final Statement, beyond general statements that Plaintiff was depressed and traumatized the evidence did not show that Plaintiff's medical condition was caused by or to what extent it was exacerbated by receipt of the Bankruptcy Package. Further, the evidence showed and Plaintiff did not dispute that his distress was caused, at least to some extent, by domestic problems that Plaintiff was experiencing at the same time. See Defendants Exs. 14, 15, 19. Thus, the evidence failed to establish with sufficient certainty the necessary causal relationship and extent of any injury. Further Plaintiff seeks damages for the costs of prosecuting this proceeding. Plaintiff failed to introduce any evidence, through testimony or documents, of costs he incurred in bringing this proceeding and since he has acted *pro se* this would be the sole category of costs associated with prosecuting this proceeding. In any event, because the Court has concluded that the Bankruptcy Package and the Final Statement in particular did not amount to an attempt to collect a debt Plaintiff cannot state a claim under 11 U.S.C. § 362(k). And even if the Final Statement did amount to an attempt to collect a debt, Plaintiff failed to prove that he was damaged by receipt of the Bankruptcy Package such that no damages could be awarded pursuant to 11 U.S.C. § 362(k).

Finally, the sole evidence related to the County was testimony that the County

(Bankr. M.D. Ala. 2007) (creditor repossessed a vehicle post-petition, refused to return it upon demand, held it for more than a month and sent a notice of intent to sell); and *In re Hildreth*, 357 B.R. 650 (Bankr. M.D. Ala. 2006) (creditor made more than 60 phone calls to debtor post-petition while debtor was represented and was also current on mortgage) to argue that willful violations of the automatic stay may result in an award of punitive damages. Under § 362(k) that is clearly correct, however, determination of whether there was an attempt to collect a debt and damages is a fact driven inquiry and

the mailing of the Bankruptcy Package is just not comparable to the facts in these cases in which creditors took repeated and extreme measures in violation of the stay.

6. Plaintiff argued at Trial that he was also damaged by Defendants' billing rates and late fees. The Court previously held in the February 12 Order that to the extent Plaintiff sought to challenge Defendants' rates this Court does not have jurisdiction over such a claim.

sets the Department's rates, thus there was no evidence with respect to the County's involvement in the relationship between Plaintiff and the Department and as a result the County will be dismissed as a defendant from this proceeding.

## IV. Conclusion

The Department's mailing of the Final Statement, Letter and Guidelines did not amount to an attempt to collect a debt and no violation of the automatic stay occurred when the Bankruptcy Package was sent to Plaintiff. Further, even if these documents amounted to an attempt to collect a debt, Plaintiff failed to establish that he was damaged thereby and no award under § 362(k) is warranted. Finally, the County was not involved in the customer relationship between Plaintiff and Defendant and will be dismissed from this proceeding.

The Court will enter a separate judgment consistent with this Order.

**IT IS ORDERED**